Good morning. May it please the Court, Gregory Ott for respondent, or I'm sorry, usually respondent, appellant, warden. District Court here found prejudice only after making several consecutive errors, all of which were consequential. The first overarching error is its understanding or misunderstanding of what Breck is and how it should be applied. In one sentence, the district court said the record doesn't reflect what theory the jury relied upon, ergo it's prejudicial. That's wrong on multiple accounts. That, strictly speaking, doesn't even amount to a finding of error, much less prejudice. I'm having some problem analyzing your brief and your argument. What is the standard of review? You don't – you're not clear on that in your brief. And that has a lot to do in these cases of how – what kind of glasses we put on, because we're limited by our standard of review. What is the standard of review on your claim? It's de novo. De novo in the application of Breck. If there are factual findings, those are reviewed for clear error, but – Where does the AEDP come in? Well, on the issue of Breck, the AEDPA does not come in. At all? No. On the application of Breck. And what is your case that says that's the law? I – well, Frye, I suppose. Frye is – every – Breck applies in all habeas cases. There used to be an issue of whether Chapman was applied through 2254. It's no longer the case. It's just Breck. What is your case that tells us that in almost all of these cases everybody starts off with the AEDPA? You say, no, we don't even have to worry about it. I would be more comfortable if there was a case that told us that so that the Supreme Court doesn't say, don't you realize what the standard of review is? Your Honor, I believe it's Frye v. Plyler, which the Supreme Court said that Breck applies in all cases on the issue of prejudice. I understand that. I'm very pleased that the Supreme Court – they've even chosen a very well-written dissent in Roy and ordained it as law. But this is a different issue. Maybe I could – you could hold up on that and come back during your rebuttal period. But it's – I didn't see that in your brief, and I'm curious about it. Well, unless I – I can say that unless I find something different, Frye is my case for Breck being the application on the issue of prejudice. And that's what the Supreme Court has said, that that applies in all cases. And that's what the district court purported to apply to find prejudice here. Counsel, did Leon exhaust his remedies in State court? Yes and no. He – there's a timing issue here. He raised this claim. He raised the merger claim on direct review. And it was denied. He went through the system on that, came into district court. That would have been pre-Chun. That's right. He came into district court. Chun was granted review. Review was granted in Chun, and then he filed a State habeas petition in the California Supreme Court. Before Chun issued, but after Chun – after review was granted, the California Supreme Court issued a silent denial in Leon's case. So before Chun was – the decision was issued, but after review had been granted in Chun? That's correct. Okay. Now, then after Chun issued, the district court found that it was retroactive – applied retroactively. That would be the district court. I'm still trying to figure out about exhaustion. So did he have any other remedies left available to him in California? Well, yes. As time has gone, one has issued, and that is that the State law on this is now that Chun was not – was retroactive under State law. The district court was incorrect that it was – that it was – that it applied retroactively under the California Supreme Court. Okay. Wait. Chun is retroactive because it's new law and retroactive, or because it was just a clarification, therefore was always in effect? So that's the State's position, is that Chun is new law and retroactive? That's correct. Retroactive under State law, and it is – and it did state a new rule. Did they specifically state that in a subsequent case to Chun, that it's retroactive? The California Supreme Court did not. The California Court of Appeal did in Ray Lucero, and that is the only – So we don't have – we – and there was another – as I recall, there was another California Court of Appeal case that went somewhat differently. And if there isn't, there soon will be. I'm quite amazed at this very important point that's not clear at all. One – in this – one – in one instance, they're saying they're clarifying their case in another – their law. In another instance, they're saying that Hansen's been overruled implicitly. It's a very important issue. If we go ahead and try to decide this issue in our court, it strikes me that we might have to refer the matter back to the Supreme Court and certify the question. Do you think it's clear enough what the Supreme Court – not the Court of Appeal – what the Supreme Court has done that we could really say that it's retroactive? No. I'm in a bit of a difficult position here because I have a Cal Supreme decision not answering the question. I do have State law, albeit from the California Court of Appeal, saying it's retroactive under State law. It is a new rule. If it's new law and retroactive, what's the result in this case? Well, if it's new law, it – Leon gets the benefit of the Chun rule, doesn't he? That's correct. Okay. And what happens when we apply Chun to Leon's case? Then that theory goes out of the picture, and the jury shouldn't have been convicted – I'm sorry, the jury shouldn't have been instructed on that theory. Okay. And since they weren't instructed, then what? Then it was – our position is it was harmless under Brecht. If you assume – if we assume that the jury was incorrectly instructed, erroneously instructed on shooting at an occupied vehicle, the – any error was harmless under Brecht. Why was it harmless? Well, based on the record as a whole, the record overwhelmingly shows at least implied malice. Leon ran around to the side of the car – Yeah, but why wouldn't the jury be – why wouldn't the jury be – should have been instructed properly on that? Beg your pardon? Why shouldn't the jury – why isn't Leon right that the jury should have been properly instructed on this point? There was confusion. California's now clarified it. It's retroactive. It applies to Leon. Why shouldn't the jury have been properly instructed there to make sure that they weren't convicting him of felony murder by using the assault as the basis for the felony? Well, in hindsight, it should have. But at the time, the law was that he was correctly instructed. Right. But he gets the benefit of that rule. So it's as though – it's as though he were – the jury was incorrectly instructed under Chun, if we apply Chun retroactively, which we have to do. And if we assume that that's an error, we can still evaluate it for harmlessness. Okay. But I want to understand – I don't understand, then, why it's harmless. The overwhelming evidence showing implied – he was – the jury was also instructed, as I assume you're aware, on implied malice murder and expressed malice murder, first degree and second degree. There's overwhelming evidence of at least implied malice murder. The jury necessarily rejected the only two defenses that were presented. Leon didn't testify at trial. He presented unreasonable and reasonable self-defense. The jury necessarily rejected both, even if you assume that this jury convicted on felony murder. Because either one of those would have absolved him down below murder. The jury also had – Right. But you could have – the jury could have rejected self-defense and still convicted him on felony murder, right, and come back with second degree. No. They couldn't have? No. Why not? Because self-defense was a defense to felony. I understand that self-defense would be a defense, but I don't see what's inconsistent about the jury coming back and saying, we don't believe it was self-defense, that's why we're going to convict him of second-degree murder, but we're going to do it on the basis of felony murder. I don't understand what's inconsistent with those theories. There's nothing inconsistent about that. What I'm saying is that the jury – we do know that they – all I'm saying is we do know they rejected the defenses. Okay. But that doesn't seem inconsistent with the idea that they might have gone back into the jury room and somebody might have said, well, I think he committed an assault, let's just convict him of felony murder and return the verdict to second degree. That's correct. But, strictly speaking, it doesn't matter because we don't have to know what the jury, in fact, did. That's – that's – If the jury didn't do it properly and the jury wasn't properly instructed, then why isn't this all error? Error, yes. Prejudice, no. The – in fact, what you're – what we're talking about is error. Is there a likelihood that they relied on an improper theory? That's essentially a test for error. Then we move to prejudice. The district court did the former, never got to the latter, of which is, assuming that error, let's look at the record as a whole and what would have happened. We have overwhelming evidence. We have jury findings. We have no affirmative evidence countering any of the implied malice elements or expressed malice elements, for that matter. The defense is – there – we have overwhelming evidence and findings for the prosecutor. There is nothing left for the defense to counter any of that because the only defense was self-defense, reasonable and unreasonable. That's out. Leon didn't testify. The only evidence of his intent was – were his statements. There is simply nothing to counter the indisputable evidence of at least implied malice. And that is our position on prejudice, which I suspect may – is that – have I clarified anything? Now, the other error I just would like to point out, I realize that review under Brecht is de novo, but the evidence that was relied on and some of the assumptions that were made were just erroneous. The reliance on unsigned letters to the court that were sent in support of leniency, some of the assumptions that were made to support a prejudice finding, such as that the jury had a shortcut, well, that again goes to whether the jury might have relied on felony murder, which in turn goes to error, not prejudice. Error is what did the jury do or what did it probably do. Prejudice is let's assume error and see what would have happened in the absence of it. And I would like to reserve the remainder of my time for rebuttal, unless the Court has any questions. Roberts. All right. Thank you. Mr. Leon's counsel. May it please the Court, Dallas Sacker, on behalf of Mr. Leon. Regarding the threshold issue of whether this Court should properly entertain the merits, I think this Court should. Our issue was exhausted in the California Supreme Court, albeit before the Court decided Chun, but the exact same legal claim was advanced there. Did you have any opportunity after Chun to go back into the California courts and say, hey, wait a minute. Whatever happened before Chun, Chun is clearly new law and retroactive and we need to get the benefit of the rule. After the California Supreme Court granted review in the Chun case, we went back to the California Supreme Court on a habeas petition and that was denied. So we have not been in the California courts after the Chun decision was issued. It was denied and was there an opinion? No opinion. It was a summary denial. It was there. I'm sorry. So you have facing you a denial where you raised the Chun issue whether it's retroactive. Well, I couldn't raise a Chun issue per se because there was no California Supreme Court opinion in Chun. I understand that. But wasn't your argument that you made the California Supreme Court was that Chun is retroactive and that's why you were bringing a habeas petition? No, Your Honor. Chun did not yet exist. I went back to the California Supreme Court after review had been granted in Chun, but there was not yet an opinion. Okay. And for reasons the court did not express, it decided we're not going to hear that, you know, go back to the Federal District Court where you already are. But there was no difference in the substance of the issue. I mean, I've raised the same issue on direct appeal in the California Supreme Court and then in the subsequent habeas petition. Well, we can't say then that the Supreme Court has ruled that Chun is retroactive. The Supreme Court hasn't said that. And as a matter of fact, when you were asking for retroactivity, they denied you summarily. Well, I wasn't asking for retroactivity because the opinion didn't exist yet. I mean, you can't ask for something to be made retroactive when it's not even in existence. When you decide the case, you'd like to have it there. It strikes me that we don't really know what the Supreme Court would do. We know what the Court of Appeals thinks. I wanted to raise the same question with you. If we don't go to the secondary argument that has been asserted of Breck harmlessness, do we need to on a very important question such as this, do we need to certify the question of the California Supreme Court? I don't believe you have to. Why am I saying we have to? The California Court of Appeal held that Chun was retroactive. The California Supreme Court elected not to grant review of that decision. So I think it's a fair assumption that it's a settled issue under California. We have no law to the contrary. We have a single case of California. Well, yes, but you and I know, looking from the Supreme Court, that they simply don't have the time or the energy to take every opinion of the Court of Appeal and review it and deny if they're not going to do it. That's why they get reversed all the time, even though there have been these opportunities to do it earlier. But this is a fairly important issue. Well, I understand your position. I'm interested in, when you get to it, of the harmlessness, the Breck standard. I assume that you agree with counsel that we follow Breck on the review? Oh, absolutely. Okay. And that our dissent in Roy has been ordained. Our panel dissent in Roy has been ordained by the United States Supreme Court is correct, so we can rely on that. There is absolutely no question that Breck is the applicable test. I just wanted to make one point. It's your position that this Court should affirm. Is that your position? The district court, absolutely. And what would be the rationale? What would we say is our bottom line? Well, going to the Breck issue, something I think that is often overlooked is the U.S. Supreme Court has said the government bears the burden of persuasion under the Breck test. So once we can see that we have an important instructional error here, which Judge Patel of the district court found, it is now the government's burden to persuade this Court, in effect, that there was no prejudicial effect under the Breck test, a substantial and injurious effect. And they can scarcely, on this record, make that showing for a very fundamental reason. The jury was charged on both murder and they were charged on a separate offense, a violation of 246, which is shooting an occupied car. The 246 was also the underlying felony for the impermissible felony murder theory advanced by the prosecutor. So this jury, in order to return a felony murder verdict, need only have found that a 246 was committed. And we know that the jury found that. They returned a conviction for the 246. Well, there's no dispute or no doubt about the facts. We know what happened. And so what would this Court say? What this Court would say is, on this record, the government cannot persuade you that the jury even considered a malice murder theory. It was a tailor-made felony murder theory for the government. Once they have the jury returning a verdict for the 246, that also supplies the basis for the felony murder verdict. And that's pretty much the end of the analysis. This Court has absolutely no idea if this jury gave a moment of consideration to malice murder. And since the government bears the burden of persuasion. The facts are clear. And there was no defense to the facts of what happened. Your client was laying in wait behind some bush or something. The car started in. He trotted over to the car, was very close to the car itself, and shot through the door and hit the man's body and killed him. There was a statement in there that he shot low because he didn't want to shoot him in the head. People die all the time from being shot in their body. It strikes me that Judge Ferris' question is a good one. With the actual facts that are before the jury, why hasn't the burden been met by the government to show that it's harmless? In any instance, under those facts, it would be second-degree murder. Because they cannot show the jury ever considered the malice murder theory. The best and most logical reading of this record is... But that's the point. Sometimes the jury, because they've been improperly instructed, don't get to that point. But that's not the Brecht standard. The Brecht standard isn't what the jury did. The Brecht standard is, did it make any difference? So we have to look at the undisputed evidence of what happened and say, does it really make any difference? The Brecht standard requires this Court to look not to the sufficiency of the evidence to support the conviction, but to the effect. That's the key word. To the effect of the error on the jury's reasoning process. In this case, the effect of the error is that the jury has a shortcut to return a murder conviction. Once they determine that the defendant has shot at the vehicle... Right. ...that supports the felony murder theory, and they don't have to give a second's worth of consideration to the issue. Okay, but the government is saying that was an error. But that's not the point. The point is, if there hadn't been an error, is there any doubt at all that there would have been a second-degree murder conviction based on the facts? And I think that's the issue that Judge Ferris is raising and the one that government is. This is the point we debated back and forth in the briefs, and I believe the government is in error in this argument. It is not a question of how strong the government's case was on the issue of malice. And by the way, I don't think it was that strong. I'll get to that in a minute. But the question is, how did the error impact on the jury's deliberative process? I don't think that's the question. The question is, had there been no error, would he have been convicted of second-degree murder anyway? Isn't that what Brecht says? With respect, Your Honor, I do not believe that is the standard. And what is your best case that says we can't even consider any of the facts that are misled in how they go about making their decision? Well, I think that the closest case that I found, this is cited in my brief, is a Third Circuit case, Laird v. Horn, where we had quite a similar error in terms of instruction was given that gave the jury a shortcut to finding guilt, and they didn't have to require the jury to pass on one of the elements of the offense. And what the Third Circuit says is we're not going to presume what a properly instructed jury would have concluded. That's not our function. Findings of fact are made by the jury. Reviewing courts review questions of law. So once a determination has been made that the jury has been misinstructed on a theory of liability, we're just not going to look to the weight of the evidence and assume that's what the jury would have done. We have to look to see what effect it had on them. And in this case, again, once the jury finds that there's been a shooting at the vehicle, that supports the felony murder theory, they don't even have to get to Malkes. And I'd note, you know, the prosecutor specifically advanced this theory in his closing argument to the jury. So for the government to say, well, no, no, no, the jury wouldn't have done that, that's not what they did at trial. At trial, they were urging the jury to review. Kennedy. The Third Circuit in Laird is looking at process, and the government is looking at the actual facts, and you're saying that you never get to that. If there's a violation of process, that ends it. Which of those two views is closest to our prior cases in the Ninth Circuit? Well, I submitted about 11 days ago a citation to the court, a very recent decision, Ayala v. Wong, from this court. It didn't really say anything new, except what the court did there is you cited Cariacos, which is the predecessor to Brecht. Brecht is based on Cariacos. And what Cariacos says, repeated by this court in the Ayala case, and I'll quote, the inquiry cannot be merely whether there was enough to support the result apart from the phase affected by the error. So you don't look to the strength of the evidence. You look to what is the nature of the error and how did it impact on the jury's deliberative process. How does your theory square with Brecht and the Supreme Court's anointing of our dissent in Roy? I think it's entirely consistent. I think. Do you? Absolutely. I think the result in this case is clear under Brecht, that the prejudice should be found. Let me briefly get to the strength of the evidence. What the evidence shows, and this is undisputed, that the shot fired by Mr. Leone was in a downward direction. The bullet entered the car in a downward direction, which is entirely consistent with the statement that Mr. Leone gave to the police, which is he was trying to shoot at the bottom of the door because he did not want to hit Mr. Hernandez in the head. Now, under California law, the test for implied malice is did the defendant have a conscious disregard for life? These facts show that he had a conscious regard for life because he wasn't trying to kill him. A conscious regard for life is he wouldn't have shot. When you fire your gun in a moving car, you don't control the bullet. See, that's a question for the jury, Your Honor. The jury is entitled to reach that conclusion, I would agree, but they're also entitled to reach the conclusion that the defense would offer, which is he had no malice, he wasn't trying to kill him. He was highly agitated that this gentleman had assaulted him unprovokedly earlier. He caused a mob to chase him home, and here he is back several hours later right next to Mr. Leone's house breaking into an automobile. So I'm not positing that it was a good idea for him to take a shot at the car. I'm just positing that a properly instructed jury in this case was more than to shot to the car. He was very close to the door, the evidence shows, and he shot at the door because he didn't want to hit him in the head. Now, you're trying to, if I understand, you think the jury would say, well, he's obviously trying to shoot in the street and miss the car. It would be very strange. My point is the jury could well have not returned a murder verdict had they been properly charged. No second degree murder? They were charged under State law with voluntary manslaughter. The trial judge believed there was substantial evidence to support that theory. There was more than substantial evidence. This gentleman had assaulted him earlier in the evening unprovokedly, caused a mob to chase him home, and here he is back next door to the defendant's house breaking into an automobile armed with a BB gun in the middle of the night. It's not your classic murder case. I mean, at the very least, you have the substantial provocation that would cause a jury to return a verdict for a voluntary manslaughter. You mean he gets a free shot because he'd had the earlier instance? I'm not positing that at all, Your Honor. I'm just submitting that a jury may well have declined to return a murder conviction, but for this erroneous felony murder theory, which didn't cause them to assess the issue of malice whatsoever. All they had to determine is once he fired a shot into the car, ipso facto, he was guilty of felony murder, which, as we now know under Chun, is an improper theory of liability, a theory, again, which the prosecutor advanced to the jury. And we have every reason to believe that's the way the jury resolved the case. I see my time is up. Thank you. Thank you. Respondent continues to rely on the theory that we don't know what the jury did, and as Judge Wallace pointed out, prejudice is beyond that. We error assumes, at worst, that the jury did convict on felony murder. Then we move to the whole record, not just the effect. Brecht language itself talks about the effect. That can't be read literally. There are many, many cases suggesting or, well, stating that it's the whole record, just as a traditional harmless error, the evidence, the counsel's arguments, and anything else that might matter. The strength of the evidence is not the only consideration, as Katyako said. No, it's not simply whether there was sufficient evidence, but it is certainly one of, if not arguably the most important, consideration. But, no, we don't submit that that's the only thing that this Court needs to look at. And I don't think that the recent case of Ayala or Acala, I don't think it says anything different. It quotes Katyako's language, which has been around for quite a while, but I don't think that can be read literally. What, in your view, succinctly, as you can state it, would be the basis for the rationale for reversal in this case on these facts and on this record? The rationale for a finding of harmlessness? For our reversing, I guess, is what you're asking. Is that this, that even assuming error, even assuming that it applies retroactively, the record, the jury's findings, the lack of evidence to the contrary, the record as a whole shows that this jury would have convicted him regardless. Regardless of what it, in fact, did, this jury would have convicted on implied malice at a minimum, if not expressed malice, murder, first or second degree. Clearly not first, but second. First because I believe they acquitted to move down to second, but at least implied malice, second degree murder, which the jury was instructed on, which was argued by the prosecutor, and the evidence overwhelmingly supports it. Judge Wallace, I looked again at my brief. Fry is my case for that proposition. Fry v. Plyler. Okay. Thank you. Which originated out of the Ninth Circuit. If the Court has no further question, I will submit it. Okay. Thank you. Thank you. We thank both counsel for the argument.
judges: Wallace, Farris, Bybee